The next case on the docket is 514-0442. Barbre v. Barbre. Is that pronounced correctly? Barbre. Barbre. I didn't hear that good. Okay, Ms. Breed. May it please the Court, Mr. Barbre, Mr. Stewart. My name is Benjamin Reed and I represent the respondent, Alan Sherry Barbre, on this. The matter is before the Court on two issues decided by the Circuit Court of Gallatin County. The first issue was the Court's denial of Sherry's motion to change venue from Gallatin County to White County. And the second issue is the Court's child support order and its deviation from the statutory guidelines by such an extraordinary amount. In regards to the motion to transfer, this was filed under 750-ILCS-511-A. In short, that statute specifies that if neither party resides in the county where the judgment was last entered or modified, that either the parties or the Court can move the Court to transfer to the county where either party now resides. In cases regarding child support, it stipulates that the case shall be transferred to where the payee spouse resides. How does this work with 512-B? I'm sorry? How does this statutory provision that you just referenced work with 5-512-B? I believe they work together, Judge. I don't have 5-512-B in front of me, but I believe it specifies that they can file in the county in the same circuit, which heard the previous judgment or the modification. And this statute essentially says that if neither party resides in the same county anymore, that they can transfer into a different county. So I don't think that they contradict one another. I think they work just fine in concert with one another, Judge. And the Court has discretion in making that decision under either statutory section? Well, Judge, actually, Mr. Stewart argued in the appellee's brief that there is discretion. And reviewing the case law, I have to concede that I believe that there easily could be discretion on account of the Court, whether or not they transfer it. However, in this case, there were no facts whatsoever tying the case to Gallatin County. That is to say that the parties both resided in White County. The children, of course, reside in White County. The parties work in White County. There was nothing relating to the case connected to Gallatin County, Judge. Except it was decided. Yes, except for the fact that it was initially decided in Gallatin County. That's the only connection to Gallatin County, Judge. Same trial, Judge, for the entering of the judgment as the post-judgment? I couldn't tell you, Judge, for certain that it was an uncontested divorce. It was entered in by agreement of the parties. So it's not as though the judge, even if he had been the trial judge, would have heard the arguments and heard testimony presented by the parties. And what kind of a record was made regarding the more appropriate county to hear it in? Judge, oral arguments were held. They were not held on the record. I was not the attorney who conducted the oral arguments. It was a different attorney. So I couldn't tell you what was said, no, before. So we don't have a record here. If there's no record made. Only the docket entry of the judge. I believe the judge specified that he heard arguments and decided to keep the case in Gallatin County. I don't think that there were any factual disputes as far as where the parties reside. Of course, where the parties were, where the children reside, or anything along those lines, Judge. So I don't think that there's any question as far as the facts go. I think the only question would be why the judge chose to keep it in Gallatin County. And as you said, we have a record, so we don't know what went behind the decision making there. Thank you. What about the agreement to keep it in Gallatin County? Judge, I believe that the agreement waived venue only for the purposes of the divorce. The marital settlement agreement specifies that specifically. Does it really say that? I'd have to look at the marital settlement agreement. I mean, it says for the proceeding. Correct, for that particular proceeding. Judge, aside from the marital settlement agreement waiving for that particular proceeding, there's also precedent saying that post-dissolution proceedings are new proceedings under the Venue Act, and thus a waiver of venue for the dissolution would have no effect on venue for a post-dissolution proceeding, such as child support. So even if that were to be interpreted as the waiving venue in general, it still would have no bearing on this post-dissolution proceeding. Okay, thank you. Sure. The arguments that were put forth essentially don't hold water as to why it shouldn't stay in Gallatin County. The first argument was what the judge and I just discussed, and that was the waiver, and I think that both the precedent and the specific waiver of the original or venue for the original proceeding means that that doesn't help water. The second argument was that neither party resides in Gallatin County at any time, and thus the statute is inapplicable, and I don't think that that would make any sense at all for the legislator to advise a statute that doesn't give parties a remedy of transferring venue once they waived in their original dissolution. And then lastly, they argued that there was no case law or sufficient precedent provided showing why this should be transported from Gallatin to White County, and they argued this under the principles of forum non-convenus, and the problem, of course, with that is this wasn't argued under the common law principles of forum non-convenus. We didn't file any motion to transfer it under forum non-convenus. This was filed under the statute, and it conformed with the statutory provisions that if you transfer or should say the judge may transfer it should the parties no longer reside in the same county. So there were no facts connecting the parties to Gallatin County. She was in conformance with the statute when she filed her motion to transfer the case to White County. Our position is once the trial court improperly denied her motion to change venue that the subsequent order is null and void. Accordingly, we would ask that the court be remanded to the trial court so that they can transfer the case to White County where they should have transferred it to begin with, and a new hearing can be held in regards to child support. Do you think the order is void of an issue? I do, Judge. On what basis? Judge, I believe if you look in my brief that it gives the specific case law that stands for that precedent, but I believe any motion for transferring venue when it's improperly denied means that any order that was issued after that is void, null and void. Speaking of your brief, it's missing a couple pages, the written version. The electronic version was complete. Well, I apologize for that. For pages three and six in your- I apologize for that. Missing, which is- I had assistance, but I take full responsibility if the clock stops here on getting you the complete brief. Well, I just thought maybe you'd want us to read pages three and six. I did, I did, because we- Yeah, I apologize, Judge. I had the electric reports form out in front of me as I was preparing for this. I had no idea that you didn't. We had the- I did as well, because your office was kind enough to file the electronic reports. Well, I sincerely apologize for that error, Judge. That was- You might want to supplement the written. I will do that, Judge. I will do that. I apologize for that. And leave would be granted to do that. Thank you, Judge. The second argument today is regarding child support. And the modification of child support lies within the sound discretion of the trial court, and it's not going to be disturbed on appeal unless an abusive discretion is found. There's a rebuttable presumption in Illinois, as you know, that the statutory percentage is the appropriate amount, and the burden is on the party asking for a deviation from the statutory percentage to give the court a good reason to do that. In this case, there was evidence presented at trial by Sherry that her wages had been frozen for the previous three years and that the children's activities, she has two children, had increased along with the cost associated with those activities. She testified she had to downsize her vehicle in order to afford gas and insurance that had dipped into her savings, and that she has to shop for the children's clothes now and bargain shopping rather than being able to buy them in clothes that she used to be able to. She testified she had less time to spend with the children because she had to do the cleaning, laundry, yard work, things that she used to actually have somebody hire to help her with back when she was married. And she testified that unlike her house, Lance's house has a pool and a hot tub, and that he was able to travel with the children much more than she was able to because she couldn't afford to. Lance presented evidence that the children's needs and expenses had, in fact, not increased, that he paid for many of the activities that they participated in, and that he typically didn't make as much income as he recently had due to the nature of his work, which was as a financial advisor. And this was confirmed by his co-worker, Gary Holland. The judge, I should say the trial court, calculated that under the statute, Lance's child support obligation should be $4,901 per month. The court, however, decided to deviate from this amount, and they ordered the court to be set at $2,000, which was approximately 40 percent of the described statutory amount. According to the court, the reason why they decided to deviate by this extent was because it would be a windfall for Sherry to get such a great amount of child support. And they cite Garrett for this precedent that this would be a windfall, which is a Fifth District case from 2003, 785 Northeast, 2D 172. And in that case, the court says, were both parents' individual incomes are more than sufficient to meet the child's needs and allow the children the lifestyle they would have enjoyed if the parties had not divorced, then they could deviate from the amount because it would be a windfall. And the court's holdings were clearly limited to that circumstance. In this case, both the parties didn't have great incomes. Her income was approximately 20 percent of Lance's. And even if the court was correct in ruling that this was an appropriate case to make such a deviation, to deviate from the statutory percentage, they set the support at 11.4 percent instead of 28 percent. It's a greater deviation than I could find in any case law, given much more extreme circumstances than this. I don't want to go through all the case law. They were in my brief, and I think that that surmised pretty succinctly what has been done in the past when the courts have decided to deviate below the statutory guidelines. But I would like to say one thing from the Supreme Court's recent holding last year in regarding the marriage of Turk, which is 2014, I.L. 116730, paragraph 53. In short, what they said in that case is there's a dual purpose to dealing with statutory guidelines. The first is to promote uniformity, which encourages settlements, and the second is to ensure the adequacy of support awards. The court stated that if the dual purpose is to be realized, then the guidelines must be applied consistently from case to case. We would argue that setting a support so far below the statutory guidelines, that is to say 11.4 percent rather than 28 percent, less than half of what the statute prescribes, renders the statute superfluous, and it does not encourage negotiations to take place outside of court. And it doesn't, it's an inadequate award based on the record that was presented. For the aforementioned reasons set forth herein, it's our belief that the trial court earned both in denying Sherry's motion to change venue and in awarding such an extraordinarily low amount of trial support given the relative financial situations of the parties. We ask that the whole thing be reversed and the case be remanded. Thank you. I'm pleased to report, counsel, my name is Greg Stewart. I'm from Conger, LA at the Carmine. I am counsel for Lance Barbary. I've been counsel for Lance Barbary throughout these proceedings. First on the issue of the venue question. Your Honor, 512 states that venue is appropriate for modification in the county in which the judgment was entered. In this particular case, the post-judgment proceedings were initiated by Ms. Barbary filing a petition to modify in Gallatin County, Illinois. She simultaneously filed a motion to transfer. We have cited the law within our brief regarding the venue provisions. And as I've noted, 512 states specifically that venue for a post-judgment proceeding under the facts of this matter is appropriate in Gallatin County. Sherry asked to move it indicating that the parties no longer or never reside in Gallatin County. That triggers the discretionary provisions under the act which they cited being 511A. The case went before the trial court just on the motion, on our response which had attached to it the transcript, portions of the transcript of Sherry's discovery deposition where she indicated the following. Whether the case was in Wye or Gallatin, her witnesses would be herself and Mr. Barbary. That she would miss a full day of work whether the case was in Gallatin or Wye. That was what was put before the court. There was no record made of the argument of counsel. The court, under its discretion, denied the motion and kept the case. To answer your question directly, Your Honor, Judge Tom Foster, the one that heard the post-judgment proceedings, was the judge that entered the judgment of dissolution of marriage in this case initially. Now under 512B, she could have filed it within any county within the circuit, couldn't she? I mean, because 512B doesn't mention county anywhere in that statutory provision. It says within the judicial circuit. She could have tried to have made a filing in Wye County and moved it to Wye County based upon her filing and we could have attacked that in Wye saying it was an improper attempt to take that judgment to another county. She elected not to do that. She filed in Gallatin. In this case, based upon the record, there was no record made by Ms. Barbary as to why a transfer of venue under the court's discretion should be allowed in this particular case. I think the court may be aware of the distance between Gallatin and Wye. They're side-by-side counties. Now in the brief, and I want to make sure the court understands this, it was argued that Ms. Barbary had an absolute right to a transfer of venue in this case, and there were cases cited by Ms. Barbary in her brief. Under the old provisions of the statute regarding change of venue, when we had a substitution of judge provision in the same statute, there were cases decided. And as this court, as Your Honor is well aware, that you can ask for a substitution of judge, and if that judge has not made a previous substantial ruling in the case, you get a substitution as a right. That's different than a change of venue from county to county. The cases cited by Ms. Barbary in her brief about her having the absolute right to a change of venue were substitution of judge cases, not change of venue cases under the applicable change of venue statutes that we have cited. So based upon those, we present to this court that the trial court appropriately exercised its discretion upon the record that it had available to it and denied a transfer of venue. A transfer of venue order under the circumstances, whether it was proper or improper, does not make it a void of order. The court has discretion. It is a court of general jurisdiction. It has jurisdiction in a divorce case to enter orders. It did so. It is not a void of order under any circumstances. Let's move to the issue of the child support court. And the key to this decision at this level of the process is, in fact, the standard of review. The standard of review, as cited in our brief, is as follows. The propriety of the child support board is within the discretion of the trial court, and the court's decision will not be disturbed absent an abuse of discretion. A trial court abuses discretion only where no reasonable person would take the view adopted by the trial court. So your position is to review the ruling of the trial court and ask yourself, would no reasonable person take the view that the trial court adopted? In this case, I'll submit to the court in my practice of law for 27-plus years in divorce law. It is uncommon and very gratifying to myself to find a trial court that will issue a 20-page written decision in the issues that were placed before it on the child support matter here. Judge Tom Foster did that. We put his ruling as the appendix to our brief. He sets forth a very complete, precise, and analytical analysis of the issues presented before it on the child support matter. And Judge Foster understood. He had a three-step analysis to make. Number one, has there been substantial change in circumstances to warrant a modification of support as requested by Ms. Barbara? He found there have been. He found that it was contained within the original merit of settlement agreement. Hurdle one was reached. He moved to hurdle two. Hurdle two told him that he was required to make a finding as to what child support would be under Section 505 of the Dissolution Act. He methodically went through and did a three-year income averaging and determined what that child support would be under the 505 guidelines. Hurdle two, he went over it. The deviation issue. This is what the totality, really, of his order was directed at. He was required to make express written findings as to why, if he was to deviate from the statutory guidelines, his reasoning for doing so. On that point, I have cited in my brief the findings of court. And on that particular point, and, again, I doubt that you've seen this in very many trial court rulings on a child support issue. Beginning at page 10 of my brief, continuing through page 11 of my brief, I set forth in paragraphs A through N very specific findings of Judge Foster that relate to his determination that a deviation was appropriate. Judge Foster specifically went through every factor plus more factors than are set forth in Section 505. He made specific findings that the children do not have lavish or extravagant needs or wants, that the children's needs and wants have been paid for and provided by the parents, that the parties, being Mr. and Mrs. Barbary, did not lead a lavish or extravagant lifestyle. He made a finding that the standard of living that the children enjoy is approximately the same as if this marriage had not been dissolved, and the marriage was dissolved back in early 2012. Mr. Barbary filed for petition to modify shortly after the two-year period ran, which has to do with some child custody issues. But that finding, Judge Foster found neither child has been denied anything or his or her financial needs, desire, or activities due to the divorce. The physical and mental and emotional needs of the children have been met by the parties, will clearly be met from a deviation of child support. Educational needs of the children have been met. The judge made the following finding. There was testimony by Ms. Barbary that she could not afford to pay for her air conditioning bill. The court found that testimony within the totality of the evidence presented to be not credible. Why? She had sufficient money, over $5,000 a month. By his calculations, I think it was less, actually. But what about the purchase of a used car? She had to change cars because she could no longer afford the gas. I think on that point, and I'm reading between the lines in the ruling, the judge made various statements about her traveling and trips with others, and that if she could afford that, she could afford things like paying for her expenses for utilities. So, it seemed to me that on some things, the judge was saying, you can enjoy the same kind of life, but you have to give up other things that you also had. Like, you have to give up the better car, but you have a car. You have to give up the trips, because even though you have the trips, you can still do them, but give something else up. Instead of new clothes, now we're going to get clothes either on sale or at shops where they recycle clothes. Goodwill, for example. There was a feeling, as I read his order, that there was a giving up of what the children had. They still may have the same lifestyle. That is, they're clothed, they're fed, they can get around, they can go play golf, they can do this. But yet, she was going to have to live with what decisions she had made, such as a lesser car, whatever. Less trips with the children. I did not read the decision of Judge Foster in that light at all. I believe he found to be her testimony that she had to downgrade on certain items not to be credible. She did not, given the financial resources that she had. And yet there were no savings accounts that you could find, right, where she was hoarding money? The record on appeal did not indicate that she had increased the value of any savings accounts since the date of the dissolution. What was your client giving up? How did his life change? What was he giving up? That was never addressed upon the record. You would be asking me to comment something outside of the record. No, I don't want to go outside the record, but that's exactly my point. I didn't see where he was giving up anything. In fact, he was benefiting by the additional cash. He was making very good money. In any case in which there's a deviation, you can argue and prove that the party that's not paying as much benefits by additional cash. He's giving nothing up. At least according to the record, I don't see he's giving anything up. And under the law and under the case of decided, it's not about who gives anything up or not. It's about what is best for the children under the facts presented if there's a deviation request. And the court very methodically, very carefully went through the factors plus more to determine, and he gave her an increase in support. He did so. $200. That is correct. And the question is, would no reasonable person do what Judge Foster did? Do you think that the wife here set the pace when she agreed to 50% at the outset? In other words, when she first entered into a child support agreement, they deviated from the standards set forth. Do you agree with that? She had agreed to a deviation at the time, and there were specific findings made as per the court was required to do by statute to allow for it. She indicated early on that the necessary amount of child support would not be 28%. And that was an agreed order? Yes, Your Honor, it was. And the agreement that she made when the original divorce was entered into, did Judge Foster's deviation actually go below her original deviation? It did. Percentage-wise? And specific findings were made within the judgment. Did it go below the percentage she had originally agreed to? You mean the percentage in the deviation order that we're here about, did it go below the deviation in the first one? Is that your question? 11.4% was the deviation that Judge Foster entered in this proceeding, right? According to the math of Ms. Barbarie, yes. I've not performed that math. Well, according to his order, the order that I'm reading of his, it says 11.4%. I've not performed the calculation on the percentage, but the order in the math textbook says so. Do you agree with me that it says that in the order? If you will cite me to it and it says it, I will agree with you. I know I read it in Ms. Barbarie's brief. Okay, my question to you is, while I look for that, although I'm not sure I'm going to spend my time doing it, was the percentage that he arrived at below the original percentage that the parties had agreed to originally? I've not done the calculation, but based upon my mathematical background, I would say the answer to that is yes. Okay. If you read Judge Foster's order and you read the steps that he went through in the time that he took to analyze this case, and if you compare that with this court's decision in Garrett, which I've cited in my argument, where it talks about the judicial function of the jurist, is to analyze the fact No one in this case can say that Judge Foster did not analyze the fact. It was a reasoned order. His analysis followed the law. When you have a case such as this, where the trial court heard the witnesses, looked at the exhibits, he made a proper ruling that he asked that you affirm in all aspects. Thank you. Mr. Reed, you have a problem? No. Okay. Thank you. This case will be taken under advisement, and a disposition will issue in due course. Thank you both.